**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**OLECIA JAMES**                                                                              **PLAINTIFF**

**V.**                                                        **NO. 4:19-CV-66-DMB-RP**

**THE CLEVELAND SCHOOL
DISTRICT, et al.**                                              **DEFENDANTS**

**ORDER**

Before the Court is Olecia James' untimely objection to the magistrate judge's order staying discovery in this case.

**I
Procedural History**

On April 26, 2019, Olecia James filed a complaint against (1) the Cleveland School District; (2) Jacqueline Thigpen, in her individual capacity and official capacity as Superintendent of the District; (3) Lisa Bramuchi, in her individual capacity and official capacity as Assistant Superintendent of the District; (4) Randy Grierson, in his individual capacity and official capacity as Principal of Cleveland Central High School; (5) George Evans, in his individual capacity and official capacity as President of the Cleveland School District Board ("Board"); (6) Todd Fuller, in his individual capacity and official capacity as Vice President of the Board; (7) Richard Boggs, in his individual capacity and official capacity as Secretary of the Board; (8) Chresteen Seals, in her individual capacity and official capacity as Chaplain of the Board; and (9) Tonya Short, in her individual capacity and official capacity as Parliamentarian of the Board. Doc. #1 at 2–3. James, who is African American, asserts constitutional claims based on the allegation that the defendants gave a white student "more points for courses than allowed by the school district's policies as outlined in the Student Handbook and Curriculum Guide." *Id*. at 2, 10.

On July 2, 2019, United States Magistrate Judge Roy Percy entered a case management

order ("CMO") which provides in relevant part:

> This Order, including all deadlines, has been established with the participation of all parties and can be modified only by order of the Court on a showing of good cause supported with affidavits, other evidentiary materials, or reference to portions of the record.
>     ….
>
> The Defendants assert immunity, including qualified immunity, defenses in this case, and the parties acknowledge that if defendants file immunity motions, this case would be stayed pursuant to this Court's Local Rules. However, all parties agree to proceed with discovery on all issues and that defendants will not waive their immunity defenses by proceeding with discovery on all issues or by not filing their immunity defense motions until after discovery on all issues is completed.

Doc. #12 at 1, 3. The CMO set a discovery deadline of January 2, 2020, *id*. at 4, which was later extended to February 3, 2020, Doc. #32.

On January 9, 2020, the individual defendants filed motions to dismiss or in the alternative for summary judgment based on qualified immunity. Docs. #35, #37, #39, #41. In support of the motions, the defendants attached, among other things, affidavits from Thigpen,[1] Grierson,[2] Bramuchi,[3] and Denise Mullins.[4] The same day, the individual defendants filed a motion "pursuant to Local Rule 16(b)(3)(B) [to] stay all matters, including discovery already propounded by the Plaintiffs, in order to limit and define the scope of any discovery moving forward, to allow only immunity-related discovery to facilitate the resolution of the Defendants' qualified immunity motions." Doc. #45 at 3. James did not respond to the motion to stay within the time allowed but on January 27, 2020, filed a motion for qualified immunity discovery. Doc. #48. On January 28, 2020, Judge Percy granted the motion to stay. Doc. #49. Judge Percy's order stays "the disclosure requirements and all discovery … pending a ruling on the motions to dismiss." *Id*.

---

[1] Docs. #35-4, #37-4, #39-4, #41-4.

[2] Docs. #35-5, #37-5, #39-5, #41-5.

[3] Docs. #35-3, #37-3, #39-3, #41-3.

[4] Docs. #35-1, #37-1, #39-1, #41-1.

On April 20, 2020, James filed a motion to strike the affidavits of Thigpen, Bramuchi, Grierson, and Mullins submitted in support of the qualified immunity motions. Doc. #105. The memorandum accompanying the motion to strike (which was denied by this Court on July 23, 2020)[5] includes an untimely objection to Judge Percy's order staying discovery in this case. *See* Doc. #106 at 5–6.

## II
## Review of Magistrate Judge Orders

Pursuant to Local Rule 72(a)(1)(A) a party may appeal an order of a magistrate judge "within fourteen days after being served with a copy of the ruling." When no timely appeal is made, a district court retains authority to *sua sponte* reconsider a magistrate judge's order. *See Cipollone v. Liggett Grp., Inc.*, 822 F.2d 335, 348 n.1 (3d Cir. 1987) (Garth, J., dissenting) ("Of course, the judge has the inherent power to rehear or reconsider a matter *sua sponte*.") (quoting H.R. REP. NO. 94-1609, at 9–11 (1976)). However, under either circumstance, the district judge may not modify a magistrate judge's order "unless the district judge determines that the magistrate judge's findings of fact are clearly erroneous, or that the magistrate judge's ruling is clearly erroneous or contrary to law." L.U. Civ. R. 72 (a)(1)(B); *see* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider [an order of a magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

Broadly speaking, the "clearly erroneous and contrary to law" standard is distinct from de novo review. *Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981). Nevertheless, "[a]n order may be deemed contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (quotation marks omitted). "This means that, for questions of

---

[5] Doc. #124.

3

law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under [the] de novo standard." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010); *see Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.").

### III
### Analysis

James argues that Judge Percy "committed plain error when he changed the agreement set forth in the CMO, which governed how discovery would proceed if the defendants raised their qualified immunity defenses during discovery." Doc. #106 at 6. James offers no specific authority for this proposition. However, the underlying contention is that the stay order had the effect of improperly modifying the CMO so as to render the order granting the stay inconsistent with law. *See Catskill Dev., L.L.C.*, 206 F.R.D. at 86.

Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order such as a case management order "may be modified only for good cause and with the judge's consent." By its terms, and consistent with Rule 16, the CMO here provides that it can only be modified upon a showing of good cause. Doc. #12 at 1. Accordingly, if the CMO precluded a stay of discovery based on a qualify immunity defense, then it was error to stay discovery unless good cause existed to do so.

#### A. Whether the CMO Precluded a Stay

The question of whether the CMO precluded a stay of discovery raises two distinct issues—whether a CMO may abrogate the standard stay of discovery following a qualified immunity motion and, if so, whether the CMO here did so.

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). To effectuate this protection, the Fifth Circuit "has established a careful

4

procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Id*. A court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Id*. If the pleadings satisfy this standard, the court may authorize narrowly tailored discovery if it is "unable to rule on the immunity defense without further clarification of the facts." *Id*.

The right to a stay is effectuated by Local Rule 16(b)(3)(B), which provides:

Filing a motion to compel arbitration, or a motion asserting an immunity defense or jurisdictional defense stays the attorney conference and disclosure requirements and all discovery, pending the court's ruling on the motion, including any appeal. Whether to permit discovery on issues related to the motion and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief.

While a party asserting a qualified immunity defense is ordinarily entitled to a stay of discovery, courts "have permitted discovery to proceed in suits against governmental officials who, by their acts or omissions, made the allowance of discovery appropriate." *Stark v. Univ. of S. Miss.*, No. 2:13-cv-31, 2013 WL 5563767, at *5 (S.D. Miss. Oct. 8, 2013) (collecting cases). Such acts include agreeing to the entry of a case management order which waives qualified immunity's procedural protections. *See Sorano v. Taggart*, 642 F. Supp. 2d 45, 55–56 (S.D.N.Y. 2009) ("[P]ursuant to the discovery plan, the defendants … waived their right to resolve the issue of qualified immunity by motion prior to trial."). Accordingly, if the CMO here, which was agreed to by the defendants, precluded a stay of discovery, then such language should be given effect.

"[R]egardless of what [a] district court had in mind at the time it signed [an] order, the order must be interpreted as its plain language dictates." *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000) (cleaned up); *see Negrón-Almeda v. Santiago*, 528 F.3d 15, 23 (1st Cir. 2008) ("[W]hen a court's order is clear and unambiguous, neither a party nor a reviewing

5

court can disregard its plain language simply as a matter of guesswork or in an effort to suit interpretive convenience.") (quotation marks omitted). When the order is unclear "[c]ourts have used canons of statutory interpretation to clarify." *Gilman v. U.S. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 23 (D.D.C. 2014) (collecting cases).

As quoted above, the CMO begins by stating the general rule that a motion for qualified immunity would trigger a stay of discovery in this case pursuant to Local Rule 16. It then goes on to state, "*[h]owever, all parties agree to proceed with discovery on all issues* and that defendants will not waive their immunity defenses by proceeding with discovery on all issues or by not filing their immunity defense motions until after discovery on all issues is completed."[6] Doc. #12 at 3 (emphasis added). The defendants contend that this language "simply allows Defendants to proceed with discovery (should they choose to do so) and file their immunity motions after the close of discovery without waiving their immunity defense." Doc. #108 at PageID #1785.

The word "however" is "defined as 'in spite of that; on the other hand; BUT.'" *In re Ramirez*, 204 F.3d 595, 599 (5th Cir. 2000) (Benavides, J., concurring). Thus, "to give the word 'however' operative effect, [a court] must interpret it as indicating that the second clause is somehow in contrast to the first clause." *Id*. Applying this rule to the CMO provision at issue, it is clear the use of the word "however" in the second sentence (which refers to an agreement to complete discovery) was intended to contrast with the statement in the first sentence (that the case ordinarily would be stayed if a qualified immunity defense was filed). Moreover, the defendants' proffered reading of the provision merely mirrors the general rule that engaging in discovery does not waive a defendant's qualified immunity defense otherwise asserted. *See Motion Med. Techs.*,

---

[6] In their motion to stay, the defendants failed to mention the parties' agreement to proceed with discovery on all issues, as expressly set forth in the CMO.

*L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 772 (5th Cir. 2017) ("We have repeatedly rejected waiver arguments when a defendant raised an affirmative defense for the first time at summary judgment—or even later.") (collecting cases); *Kiser v. Garrett*, 67 F.3d 1166, 1169 (5th Cir. 1995) ("Qualified immunity is not waived when a defendant fails to take an interlocutory appeal and, instead, subjects himself to discovery and trial."); *see generally Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 309 (5th Cir. 2019) (affirmative defense preserved if pled in answer). If this was the only purpose of the CMO's language, there would have been no reason to include the provision at issue. *See Gilman*, 32 F. Supp. at 23 ("[A]pplying the canon against surplusage to the Court's order dictates an interpretation that none of the phrases are inoperative or superfluous, void or insignificant.") (quotation marks omitted).

For these reasons, the Court concludes that the CMO precluded a stay of discovery based on the filing of a qualified immunity defense. Accordingly, discovery should not have been stayed unless good cause existed to modify the scheduling order. *See* Fed. R. Civ. P. 16(b).

### B. Whether Good Cause Existed to Modify the CMO

To determine whether there is good cause to modify a case management order, a court should consider (1) the explanation for the inability to comply with the scheduling order; (2) the importance of the requested change to the scheduling order; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure any prejudice. *See Leza v. City of Laredo*, 496 F. App'x 375, 376 (5th Cir. 2012).

There is no argument that the defendants are *unable* to comply with the CMO's requirement that discovery proceed after the filing of a qualified immunity motion. Rather, it seems the defendants simply do not want to engage in discovery. Under these circumstances, the Court concludes that the first factor weighs against a finding of good cause.

As to the second factor, there can be no question that the procedural protections afforded a

7

defendant asserting a qualified immunity defense serve important purposes. *See Backe*, 691 F.3d at 648. Thus, in a vacuum, a modification of a scheduling order to provide a defendant such protection would undoubtedly be important. However, the importance of such a stay is necessarily diminished when the right to a stay has been waived. Accordingly, the second factor also weighs against a finding of good cause.

Next, because the defendants submitted numerous new affidavits in support of their motions, a stay of discovery, which would prohibit James from exploring the factual assertions in the affidavits, would undoubtedly cause prejudice. *See United States v. Binadio*, No. 3:13 CV 591, 2014 WL 3747303, at *3 (D. Conn. July 17, 2014) ("Plaintiff is quite correct that it will suffer prejudice if this new evidence is permitted, without plaintiff having had a prior opportunity to analyze or oppose it, this would be, in plaintiff's words, 'classic sandbagging.'"); *Magoffe v. JLG Indus., Inc.*, No. 06-0973, 2008 WL 2967653, at *24 (D.N.M. May 7, 2008) (submission of affidavit after close of discovery "unfairly prejudice[d] the … ability to brief dispositive motions and prepare for trial"). The resulting prejudice to James would seem to be by design since, among other things, the defendants requested a stay of the discovery then *already served* by James,[7] though there was nearly a month remaining before the discovery deadline expired.[8] Such prejudice, which can not be cured so long as a stay is in effect, can not be remedied by a continuance.

In sum, all the factors weigh against a finding of good cause. Accordingly, the stay order

---

[7] James served on the defendants December 3, 2019, requests for admissions, interrogatories, and requests for production. Docs. #27, #28, #29, #30. Only responses to the requests for admissions were served by the defendants. Docs. #43, #44. Based on the docket, the responses to the requests for admissions, which were served on January 9, 2020, appear to be untimely so as to result in deemed admissions. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.").

[8] Indeed, it appears the defendants served new affidavits on James and then immediately and unfairly took steps to cut off her ability to discover information to respond to them. As the CMO provides, the defendants risked no waiver of a qualified immunity defense, even if the defense was not asserted until after the discovery period expired.

8

impermissibly modified the CMO and the Court will, in the exercise of its inherent authority, *sua sponte* set aside the stay order.

### IV
### Conclusion

For the reasons above, the order staying discovery [49] is **SET ASIDE** and the stay on discovery is **LIFTED**.[9] The discovery period shall run through October 9, 2020.

**SO ORDERED**, this 30th day of July, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[9] For all discovery requests pending at the time the stay was imposed, the running of the response time period resumes this date.